People v. Ronald D. Collins 516-0355 My name is Elizabeth Crotty and I represent Ronald Collins in this matter. Here, this was a case based on a credibility contest. And the key issue for the jury was to decide whether MP's testimony was both sufficiently credible and sufficiently reliable to show beyond a reasonable doubt that the State had proved the element that Mr. Collins had indeed exposed his genitals. Here, while there were multiple errors, the key issue was that the jury's rational deliberation about the facts and its determination of the credibility and reliability issues was improperly influenced by the admission of Officer Brugger's opinion testimony about the very poor quality surveillance video in this case. Both testimony that the video showed some movement between the cars and that testimony would have been consistent with MP's version of events, not consistent with Mr. Collins' interrogation statements, and also Brugger's plain testimony that the video was consistent and matched MP's prior statements very well. The entirety of this testimony was improper. And key to understanding this is viewing the video itself. Again, it's very poor quality. The State announced pre-trial that it was going to seek, see if it could get the video enhanced. For better quality, it was unable to do so. So it relied on this surveillance video that you can't see the parties. You can see cars. There are clearly artifacts on the video. It is very much open to interpretation, and that interpretation should have been done by the jury, not by Officer Brugger. This was just a question of whether or not there was movement by the defendant in the area. So to back up to the facts a little bit, we have surveillance video of a Walmart parking lot. The MP testified that all parties agreed Mr. Collins' vehicle pulled in next to the vehicle that MP was inside. The surveillance video, it's unlikely you would be able to identify the cars themselves without some assistance. Mr. Collins does not dispute the ability of Brugger to testify, based on his experience with viewing Mr. Collins' car, that this is indeed Mr. Collins' car. When you say pulled in, I think it was a case of repositioning the car, wasn't it? So essentially both. So Mr. Collins was parked somewhere else in the parking lot, and then he pulled into the space next to the car that MP was inside. Kind of at an angle, I thought. So the... Not perfectly parallel, was it? I believe this was a parking lot where the spaces themselves are angled. Oh, okay. So I don't think he was parked improperly in any way. But the door was open. That was the question. Well, I thought that was not a problem. I mean, they said the door was open. I thought everybody agreed to that, or did they? No, that was precisely the dispute. So at the point that he pulled in and was sitting next to, the cars were next door, next to each other. And what was happening in the car next to him? Well, that's the question. So you can't see any of this on the video. I mean, what were the girls doing? They were sitting in the car while their mom and other siblings went into the store. And they weren't doing anything? Per their testimony, no. I thought there was testimony otherwise. Mr. Collins' statement was that they had flashed him beforehand. None of that would be visible based on the quality of this video. So the State's argument and case was that this video confirmed MP's testimony because it shows that the door opens. Now, that's the argument. Ruger's actual testimony is that you can see movement between the vehicles that would be consistent with a car door opening. Now, Mr. Collins, in his interrogation by Officer Ruger, was emphatic that he had no recollection of actually getting out of the car. He didn't dispute the fact that he pulled in next to them. Again, he indicated that they had flashed him. He pulled closer to get a better look. He thought they were 16 or 17. You know, again, this is a dark band. So these were all factual issues that the jury had to determine who was telling the truth or whose testimony was reliable. So it's not merely credibility, but reliability under stress, what view they had, their prior consistent and inconsistent statements. But viewing this video is important because if you look not just at this snippet that the parties dispute, but at all of the video, you'll see what might be the shadows of clouds, what might be the shadows of people, what I would refer to as pixelation, so you see sort of squares appear versus a clear video. So this isn't a case like the not very distant case of Thompson where we're talking about identification of a person where the video is somewhat clear and it's just is that the guy, is that not the guy. The officer has some prior experience. And the jury said it was. In Thompson? In their finding. In this case? Yes. Well, the other part that's important is that the video, now this was not objected to or disputed by either party. The video was shown one time in the courtroom. The court was emphatic that we're not going to send it back with you or let you see it again. And in counsel's post-trial motion that was three months late, he indicated, well, we really should have had, and indicated for the first time, we really should have had the juries allowed to view this individually close to the screen. So that implies at least that the jury's view of this video is not very clear. And that's why this is so prejudicial. The video is very much open to interpretation. And you have a police officer, an authority figure testifying, this is what I see on the video, and that's consistent with what they've been telling me all along. So that really takes the deliberation out of the jury's hands because they're not able to clearly view the video. They're not able to look at it closely, slow it down, review it. And they're simply, in some degree, forced to rely on the officer's opinion testimony, both that, yeah, this thing that could be a shadow or whatnot based on a rational viewing of the video, actually that's a door opening, so that supports MP's testimony. And also that his testimony that after viewing all of the video, it's very consistent with MP's testimony. So that brings in improper testimony and improper reference to prior consistent statements. So what we have is excessive repetition of prior consistent statements, reference to both through Ruger's testimony and through the interrogation video, reference to multiple witnesses that were consistent with the girls' stories that, you know, this is an interrogation technique, but, again, it's heard without context by the jury. And we also have the state hammering from opening statements through closing arguments, hammering the emotion that this is a predator, he's preying on these girls, he's hunting. And those are very clearly improper arguments based on our case law. So you have the state seeking to put its finger on the scale, essentially, in what should be a credibility-based case where the jury itself has time to analyze the video, has time to weigh the evidence, and instead the state says, well, just rely on Ruger's opinion, that's good enough. Isn't there case law that indicates that this type of testimony, if it's helpful, is allowed? So certainly when you're talking about interrogation videos or things like commenting on what a video shows, you can provide context and things like that. When you're talking about identifying a person or an object on a video, the person who's doing that needs to have some basis for being able to do so better than the jury themselves. Again, this case involved both types of testimony. Mr. Collins doesn't dispute that it was appropriate, given the quality of the surveillance video, and Officer Ruger's view, ability to view Mr. Collins' truck. He can say, yeah, that's his truck, even though Mr. Collins admitted that that was his truck. He can identify the parties walking out of Walmart to say, yeah, that would have been them. He didn't dispute that, and we don't dispute that on appeal. The difference is where you have such a poor-quality video, and you see artifacts in other portions of the video that are just as consistent with movement, even though there's no object to be causing movement, or you can't discern what the object would be, that crosses the line because Ruger doesn't have any special expertise. He wasn't offered as an expert, and he wasn't present. He has no particular ability to indicate what this actually showed, that the jury itself could not confirm it. So for those reasons, we ask this Court to reverse. Thank you. May it please the Court, Counsel. My name is Max Miller, and I represent the people of the state of Illinois. A defendant was convicted of sexual exploitation of a minor following a jury trial. It raises three main issues on appeal. The first is three – the defendant argues three instances of improper prosecutorial conduct. It's worth noting at the outset that these comments were not properly preserved and could be deemed winged unless the Court decides to – the defendant satisfies plain air review. The first claim that the defendant raises, it challenges the use of the prosecutor's word predator, and it cites People v. Pula Masaka, a Second District case, a criminal sexual assault case, where the Court held that this word was merely being used to inflame the passions of the jury. One of the head notes of that case, 24, it summarizes very well, the state engaged in prosecutorial misconduct in closing a rebuttal by referring to the defendant as predator in sexual assault trial. We believe that this is a very different offense, that the state's referral to the defendant here as a predator was necessary to provide the proper context for what the defendant was actually engaged in. We know the prosecutors are a lot of wide latitude and can comment on any evidence that is fair and reasonable inference. And here, the state submitted evidence that showed that the defendant was aware that he was on camera, that the defendant waited, there was an open spot next to the vehicle on the left side, that the defendant could have moved into at any time, but the defendant didn't. The defendant waited until a spot opened up on the right side. Conveniently, on this side, when the defendant pulled in, the defendant would have been able to exit his car, been obscured on the right by his vehicle, and obscured on the left by the other, and so this wasn't caught on tape. So the state merely made an inference from this, circumstantially, that the defendant positioned himself intentionally, and that this was a premeditated act. The defendant argues the definition of the word predator and contests that this was not a premeditated act, but that's simply the state's argument. It is using the word as it's meant, that the defendant picked these two girls out, a 10- and 13-year-old girl, watched them, waited for the opportunity to present himself, and then moved in to execute that plan. The defendant next accused the prosecutor of misstating the evidence, excuse me, that they enlisted improper lay opinion testimony. The defendant rightfully points out that Officer Bruger was not testifying as an expert, but that was never the claim. In People v. Garrett, the court said that as long as testimony is rationally based on a witness's perception and helpful for a clearer understanding of the fact at issue, that it could be allowed. So when the Officer Bruger testified that he saw movement, the trial court, it was objected to, the trial court went out of its way to say the jury does not have to believe this. It does not have to accept Officer Bruger's statement that this is movement. And further, the state did not rely in closing argument on Officer Bruger's testimony to say that movement actually took place. And movement is not even an element of this defense. So in and of itself, without an additional argument, it's hard to see how the defendant could have suffered any prejudice from this. Is that counsel's argument about the video, is that where it all comes down to is whether or not, I guess from her, you know, she can speak, you know, her position, but it sounds like it is based on the movement argument. Is there anything else about this video? Because, you know, the officer wasn't there, right? So the counsel's mentioned that. So his stating that, hey, I see movement, and he wasn't even, you know, at the scene, you know, how can that be allowed? How is that helpful beyond anyone else testifying? Like you said, it's a lay witness. It seems like that isn't necessarily proper since it's a lay witness. What's your response to that? Well, that Officer Ruger has been a member of that department for a number of years, and that he has specifically worked in cases in the Walmart parking lot, and that he has reviewed surveillance. So although he doesn't have any expert credibility in that sense, he is able to offer testimony that might make the issue easier for the jury to determine, you know, if they're offered one opportunity to view this. The defendant does argue that, but they cite no case law saying where they're required to provide more than one opportunity. So all the facts that might be relevant for the jury to consider, you know, Officer Ruger's testimony was not presented as a conclusive fact, that he said there was movement, and therefore there is movement. And not only do we know that because the jury was allowed to consider it, but also because the State didn't utilize it in its closing argument. They didn't rely and say Officer Ruger said there's movement. Therefore, you know that the defendant exited his vehicle. The State relied on testimony by MP, the 13-year-old who witnessed the defendant's actions. But it was – since it is a contest of credibility, it goes towards whether or not the defendant was telling the truth. And on the interrogation video, the defendant and the officer have an exchange, and the officer obviously engages in deception tactics, which is common to elicit a confession from the defendant. He tells them, well, you were caught on camera getting out of your vehicle. And he goes on to say, well, you were caught on your camera exposing yourself to the minors. And he says, well, you may have caught me getting out of the vehicle. You may have – that may be on the camera, but you certainly did not show me exposing myself. And then he was emphatic in that denial. And the defendant even used that argument, saying the defendant – or that he, you know, continually denied ever exposing himself. But implicitly he conceded that the video may have shown him exiting the vehicle. And in such a contest of credibility, it becomes relevant to look at, is there any proof in this video that shows it, but also comparing his story to the victim's story. And the beginning of the defendant's story is already contested. The defendant argues that the minors flashed him. The minors said they didn't. Viewing the facts in line with what's reasonable to say, we should assume that they didn't. But even granting that they did, that in no way makes this some sort of permissible or consensual encounter. And when you're proving a case circumstantially, we're saying, why did he pull up next to these minors in the first place? And his best argument is, well, they caught his attention by flashing him, and so he pulled into an adjacent parking space. But he didn't even do so immediately. Why is he waiting? Why did he wait for a spot to open up that just so happens is obscured for the camera? And the State introduced evidence that said that it was public knowledge that Walmart's parking lot surveyed. It's posted right there. And for that reason, we would, if there are no more questions, respectfully request that they affirm. Thank you, counsel. The vote. Thank you. First, the State's attempt to distinguish Mokosaka from this case are not persuasive. Calling the purveyor of the sexual assault. There's somebody's phone going off. Could you take it outside, please? Or what do I hear? Yeah. Well, just take it outside. May I ask, can you take the phone out, please? Take it out, please. All right. You start over. The argument that sexual assault against a learning disabled woman, which is somehow distinguishable for the use of the word predator from this case, is not persuasive. The argument, even if the facts were as the State argues, the use of terminology like predator, hunter, prey has repeatedly been seen as inappropriate because it serves to fan the flames. Certainly, the State was free to argue that he did this deliberately, but use of those inflammatory words was inappropriate. More importantly, the context of this case is critical in assessing all of these errors. Officer Ruger was in no better position than the jury to determine whether the video did or did not show movement. As the State acknowledges, he had no expert. He was not offered to do this as an expert. He doesn't have credibility on the subject. We are all probably familiar with a Walmart parking lot. That doesn't mean we know which artifacts are artifacts and which are movement on the video. That's for the jury to decide. And it's also in the context of the improper arguments by the State, questions about prior consistent statements. It's not just about the movement, but it's also about Officer Ruger's testimony that the entirety of the video was consistent with the girl's prior out-of-court statements. And that is where we get into extreme prejudice because you have the argument throughout, based on this evidence, that this was consistent, this was consistent, this was consistent, and then you have the interrogation where Ruger refers to many witnesses who were, again, consistent. And that's where we improperly influence the balance of credibility, based on what is a video that's very much subject to interpretation. The girls testified at trial. They did. Only one of them, and both in her, the younger girl was on the other side of the car, both in prior statements to the police and at testimony at trial testified. I couldn't see him from the waist down. So we only have one witness that even claims to have seen the alleged exposure. So that is the very narrow credibility contest of whether she was both credible and whether her, if this was a brief incident, whether it was reliable, whether she saw what she thought she saw, and whether she was telling the truth beyond a reasonable doubt. And where these improper opinions, the improper fanning of the flames by the prosecutor with words like predator, prey, hunting, this was an unfair trial based on these errors. And for those reasons, subject to any further questions, Mr. Collins asks that this court reverse the misdemeanor conviction and remain for a new trial. Thank you. Thank you, counsel. All right. The court will take a brief recess, then come back here in a few minutes and we'll continue with our last many cases.